*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
July 1, 2021

v

PAUL ANTHONY PLULIK, JR.,

        Defendant-Appellant.

No. 350098
Shiawassee Circuit Court
LC No. 2018-003136-FH

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant entered into a plea agreement and on December 11, 2018, pleaded guilty to one count of possession of methamphetamine, MCL 333.7403(2)(b)(*i*).[1] On February 8, 2019, defendant was sentenced, as a third-offense habitual offender, MCL 769.11, to 76 to 240 months' imprisonment for possession of methamphetamine. Defendant now appeals as on leave granted,[2] and argues that his departure sentence was unreasonable because the trial court's rationale supporting the departure was inappropriate and the extent of the departure was disproportionately lengthy. We affirm.

## I. BACKGROUND

At the February 8, 2019 sentencing hearing, the trial court noted that the guidelines minimum sentence range for defendant's possession of methamphetamine conviction was 19 to 57 months' imprisonment. Defense counsel argued that "but for [defendant's] addiction . . . [h]e wouldn't be doing a lot of the shenanigans that he's done in the past[.] . . ." Defense counsel "was hoping to make an argument to the Court . . . fashion some type of sentence that keeps [defendant] local and he get some inpatient," but defense counsel did not think "that's a reality given the

---

[1] In exchange, the prosecution dismissed defendant's original charges of possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*), and third-degree retail fraud, MCL 750.356d(4). The prosecution also dismissed defendant's fourth-offense habitual offender notice, MCL 769.12.

[2] *People v Plulik*, 505 Mich 1038 (2020).

guidelines as they are now." In response, the prosecution argued that defendant "has a plethora of manufacturing [drug]" convictions, as well as the following separate convictions: (1) resisting and obstructing police officer; (2) assault and battery; (3) possession of a short-barreled or sawed-off shotgun; (4) domestic violence; and (5) impaired driving or drunk driving. Notably, the prosecution added, defendant "had since 2005 when this addiction became obvious to seek out treatment once he was released from the Department of Corrections, and it doesn't appear that he bothered to seek out treatment."

Before imposing defendant's sentence, the trial court noted that "it would depart upward to reach its chosen sentence even if the guidelines were scored differently[.]" In imposing sentence, the trial court stated that defendant had a history of manufacturing methamphetamine and running from the police. Although the trial court acknowledged that the guidelines are "a recommendation from the Legislature," it found that, in this case, the recommendation was unreasonable. The trial court noted that defendant's plea agreement with the prosecution reduced defendant's maximum possible prison exposure from life to only 240 months' imprisonment. The trial court further stated that, pursuant to *People v Armstrong*, 305 Mich App 230; 851 NW2d 856 (2014), "dismissed or uncharged conduct as part of a plea agreement may properly form the basis of an upward departure." The trial court stated:

> The Court also notes that [defendant had] multiple probation and parole violations from [his] previous convictions.
>
> [Defendant had] been sentenced to prison three times and that's a fact that isn't considered by the guidelines.
>
> [Defendant had] successfully completed outpatient substance abuse treatment twice, but it's clear to the Court that those experiences had not prevented [defendant] from reoffending, and that leads the Court to believe that [defendant is] not a likely candidate for rehabilitation.
>
> \* \* \*
>
> According to the file, [defendant had] committed [his] first felony in 2003. [Defendant's] criminal history continues largely uninterrupted up through the present.
>
> The only thing that seems to stop [defendant] from committing crimes is incarceration, and unless [defendant is] incarcerated, [defendant is] committing crimes.
>
> So a major focus of this sentence will be both the protection of society and preventing [defendant] from committing new criminal acts; in other words, incapacitation.
>
> \* \* \*
>
> According to the Court's calculation[,] this will be [defendant's] fourth sentence to the Michigan Department of Corrections.

The trial court noted defendant's other prior sentences: (1) in 2005, defendant was sentenced for a probation violation to 24 to 60 months' imprisonment; (2) in 2006, defendant was again sentenced to 40 months to 30 years' imprisonment; and (3) in 2010, defendant was sentenced to 51 months to 20 years' imprisonment. The trial court also indicated that "[l]ooking at the guidelines, the concerns expressed by the Court needed to consider the recommendation of the Legislature as it would apply to a Habitual Offender Fourth[,]" which would result in a guideline minimum range of 19 to 76 months' imprisonment. However, the trial court added, defendant would, in that scenario, still get "the benefit of [his] plea with the dismissal of charges and the reduction in maximum sentence." Accordingly, the trial court sentenced defendant to 76 to 240 months' imprisonment for possession of methamphetamine.

Defendant filed a delayed application for leave to appeal, which this Court denied.[3] Defendant then sought leave to appeal in the Supreme Court. In lieu of granting leave to appeal, the Supreme Court remanded the case to this Court for consideration as on leave granted.[4]

## II. STANDARD OF REVIEW

On appeal, defendant argues that he is entitled to resentencing because his sentence of 76 to 240 months' imprisonment for possession of methamphetamine was an unreasonable and disproportionate upward departure from his recommended minimum sentencing guidelines range. We disagree.

This Court reviews the trial court's sentencing decision for an abuse of discretion. *People v Skinner*, 502 Mich 89, 128; 917 NW2d 292 (2018). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Dixon-Bey*, 321 Mich App 490, 533; 909 NW2d 458 (2017), citing *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). A trial court abuses its discretion by imposing a departure sentence when it violates the principle of proportionality. *Dixon-Bey*, 321 Mich App at 523-524.

## III. ANALYSIS

While the applicable sentencing guidelines range is advisory only, "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). The sentencing guidelines are "a highly relevant consideration in a trial court's exercise of sentencing discretion," and the trial court "must consult those [g]uidelines" when making a sentencing determination. *Id*. at 391 (quotation marks and citation omitted).

This Court is only required to review a sentence that departs from the range recommended by the statutory guidelines for reasonableness. *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018), citing *Lockridge*, 498 Mich at 392. The central question in the reasonableness inquiry is whether the trial court abused its discretion by violating the principle of proportionality

---

[3] See *People v Plulik*, unpublished order of the Court of Appeals, entered September 11, 2019 (Docket No. 350098).

[4] *People v Plulik*, 505 Mich 1038 (2020).

set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *People v Steanhouse*, 500 Mich 453, 476-477; 902 NW2d 327 (2017). The principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 459-460. Factors relevant to the proportionality of a departure sentence "include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 523-524. Other factors include "the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Id*. at 524 (quotation marks and citation omitted) . Moreover, the trial court should identify the factors warranting a departure and justifying the extent of the departure. *Milbourn*, 435 Mich at 659-660.

A trial judge may impose a sentence that departs from the guidelines when the recommended range "is disproportionate, in either direction, to the seriousness of the crime." *Milbourn*, 435 Mich at 657. However, there are no reasonable grounds for departure where the trial court fails to offer any explanation as to why that scoring was insufficient. *Dixon-Bey*, 321 Mich App at 525-526. Therefore, in addition to adhering to the principle of proportionality, "sentencing courts must justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 392. This justification must include "an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citation omitted).

In this case, the trial court articulated several reasons for its upward departure. The trial court found that the sentencing guidelines did not take into account that defendant had been sentenced to prison on three different occasions. The trial court noted that defendant had multiple probation and parole violations for his prior convictions, and although he had completed outpatient therapy treatment twice, the trial court found that those experiences had not prevented defendant from reoffending, deeming him an unlikely candidate for rehabilitation. The trial court thus properly considered defendant's lengthy history of prior sentences, violations, and his failure to rehabilitate.

As an additional basis for its departure, the trial court noted that defendant clearly had not learned from his prior incarceration and attempts at rehabilitation, citing defendant's significant history of criminal convictions. The trial court cited specific examples to support its reason: that although defendant had completed outpatient therapy treatment twice, the trial court found that those experiences had not prevented defendant from reoffending; that defendant had committed his first felony in 2003, and his criminal history continued largely uninterrupted up through the present; that the only thing that seems to stop defendant from committing crimes is incarceration; that unless defendant is incarcerated, he is committing crimes; and adhering to the guidelines range alone was thus clearly not sufficient to protect society and prevent future crimes. The trial court also expressed a need to adequately protect society. Defendant's pattern of committing new criminal acts posed a significant threat to society. Given defendant's failed rehabilitation, the trial court was justified in its concerns for the safety of society. Therefore, the trial court provided adequate reasons to depart upward from the sentencing guidelines.

The trial court also considered defendant's dismissed or uncharged conduct as part of his plea agreement to form the basis of defendant's upward departure sentence. Defendant fails to

cite any authority supporting that a trial court may not consider dismissed charges and uncharged offenses when determining the appropriate minimum sentence imposed. This Court has held that the "sentencing court is allowed to consider the facts underlying uncharged offenses. . . . Further, this Court has recognized that a sentencing court may consider the nature of a plea bargain and the charges that were dismissed in exchange for the plea for which the court is sentencing." *People v Smith*, 482 Mich 292, 299-300; 754 NW2d 284 (2008). Considering the record as a whole, the trial court adequately supported that an upward departure sentence was warranted in this case.

The trial court also supported the *extent* of the departure made in this case. The top end of defendant's recommended sentencing guidelines range was 57 months' imprisonment, but the trial court imposed a sentence of 76 months' imprisonment, which was the maximum minimum sentence for the range if defendant were sentenced as a fourth-offense habitual offender. The trial court mentioned and considered how it arrived at this 76-month sentence, and it reasoned that this lengthy sentence was warranted because defendant still received the benefit of the plea by the dismissal of his original charges of possession with intent to deliver marijuana and third-degree retail fraud, and the dismissal of his fourth-offense habitual offender notice (which reduced defendant's maximum sentence exposure from life to 240 months). The trial court determined that the longer sentence would be appropriate because it did not find that a sentence within the current guidelines range would serve as a deterrent, especially given that defendant could not be rehabilitated and he was a danger to society. The trial court also compared the 76-month sentence to defendant's prior sentences, and it desired to give him more time given his failure to rehabilitate.

While the trial court could have sentenced defendant to more than his previous high of 51 months and stayed within the guidelines range (i.e., it could have sentenced defendant to a minimum between 52 and 57 months and that would have been higher than defendant's prior 51-month sentence but still fall within the guidelines range), the trial court looked at the guidelines range as applicable if defendant were a fourth-offense habitual offender because of his prior sentences and failure to rehabilitate. Therefore, the trial court supported that an upward departure sentence was warranted, and it adequately connected those reasons to the extent of the departure made in this case.

Affirmed.

/s/ Kathleen Jansen
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause

-5-